**UNITED STATES POSTAL SERVICE, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 79–1148.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 7, 1979.

Decided Jan. 29, 1980.

Bruce Joel Jacobsohn, Senior Asst. Regional Labor Counsel, U. S. Postal Service, Philadelphia, Pa. (Stephen E. Alpern, Associate Gen. Counsel, Jesse L. Butler, Asst. Gen. Counsel, Sherryl A. Cagnoli, U. S. Postal Service, Washington, D. C., on brief), for petitioner.

J. Keith Gorham, N. L. R. B., Washington, D. C. (John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Jay E. Shanklin, N. L. R. B., Washington, D. C., on brief), for respondent.

Before WIDENER and PHILLIPS, Circuit Judges and HOFFMAN, Senior Judge, United States District Court for the Eastern District of Virginia, sitting by designation.

PER CURIAM:

The United States Postal Service petitions under Section 10(f) of the National Labor Relations Act, as amended, 29 U.S.C. § 160(f), for review of a final order of the National Labor Relations Board, and the Board petitions for enforcement of the order under Section 10(e) of the Act, 29 U.S.C. § 160(e). We believe the Board's decision was not supported by substantial evidence and deny enforcement.

Joseph King was employed as a part-time flexible clerk in the post office in Fairmont, West Virginia. After a neck injury, King was absent from work from June 24, 1976 to September 9, 1976. King had been scheduled to return to work on September 4. On September 13, Supervisor Earl Tin-

der asked King to produce the appropriate medical documents for the additional days of absence. King said that he would, but that it would take a "few days." On September 15, acting Supervisor Harry Bertchty called King into an office immediately off the workroom. There a second acting supervisor, Alan Moran, presented King with a letter of suspension prepared, signed and authorized by King's regular supervisor, Tinder, who was on sick leave. King refused to take the letter or to acknowledge by signature its presentation to him.

Upon returning to his work place, King discussed the letter with his union steward, who advised him not to sign anything without a union representative present. Meanwhile, Moran consulted with his supervisor, who told him to attempt again to deliver the letter of suspension. Again King was called in and again he refused to accept the letter, this time demanding a union representative. Moran ordered King to accept the letter. King responded with a profanity. Shortly after this second meeting, Moran told King to leave the premises because of his insubordination in refusing to accept the letter in the face of a direct order that he do so. Later King was informed that he was discharged.

The Fairmont Local of the American Postal Workers Union filed a charge with the Board that the Postal Service had violated section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), in discharging King. In a decision issued April 5, 1978, an Administrative Law Judge (ALJ) found that the Postal Service had discharged King "because of his refusal to accept a written notice of suspension without the presence and assistance of his statutory representative." The ALJ concluded that this violated section 8(a)(1) on the basis of the Supreme Court decision in *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975), which held that employees were entitled to have a union representative present during certain investigatory interviews that might lead to disciplinary action, and a later decision by the

Board, *Certified Grocer's of California, Ltd.*, 227 NLRB No. 169 (1977), which extended *Weingarten* to cases such as the instant one. The Postal Service filed exceptions to the decision of the ALJ.

On August 25, 1978, a three member panel of the Board affirmed the decision of the ALJ. "In adopting the Administrative Law Judge's Decision," the panel said,

> we rely solely on his finding that King was discharged for seeking the assistance of his union representative at a meeting at which he was ordered to sign and accept a written notice of suspension. Sec. 7 of the Act provides the employee with a right to seek the support of his union representative in such a situation. Respondent discharged King because of that protected conduct and the discharge, therefore, violated Sec. 8(a)(1) of the Act. In these circumstances we find it unnecessary to decide whether *N.L.R.B. v. J. Weingarten, Inc.*, 420 U.S. 251 [95 S.Ct. 959, 43 L.Ed.2d 171] (1975), which holds that an employer is required to permit the presence of a union representative in certain circumstances, applies to the facts of this case.

237 N.L.R.B. No. 169 (1978).

■ Shortly thereafter, the Ninth Circuit rejected the Board's earlier extension of *Weingarten* and held that an employee had no right to have a union representative present at an interview held simply to inform an employee of previously decided disciplinary action. *NLRB v. Certified Grocer's of California, Ltd.*, 587 F.2d 449 (9th Cir. 1978). The Board now argues that the Postal Service's assertion that King was fired for insubordination in refusing to accept the letter was all along a "pretext," and that the real reason King was fired was his request for the assistance of a union representative.

There is simply nothing in the record to support this "pretext" theory. The focus of the administrative hearing was on the *Weingarten* theory. The charge brought was that

> On or about September 15, 1976, the [Postal Service] by its officers, agents and representatives refused to allow Joseph A. King to have a union representative present at an investigatory interview and on or about November 2, 1976, terminated the employment of Joseph A. King because of his refusal to proceed with the interview without a union representative.

This reason—King's refusal to accept the letter of suspension—was the reason for King's dismissal that was charged and found. Under the theory of the Board at that time, King's refusal to accept the letter was protected conduct. There was no evidence adduced to show that that conduct was a "pretext" for King's dismissal, and that the real reason was his request for a union representative.

The very evidence upon which the Board now seeks to rely demonstrates this. The Board notes that King had refused to accept a letter of suspension presented to him on May 26, 1976 and had not been dismissed then. The Postal Service asserts, however, that it could have shown, had it known the case would ultimately be decided on a theory of "pretext," that King requested a union representative at that meeting as well.

■ We agree with the Postal Service that it should not be required to introduce evidence in anticipation of such later shifts by the Board. The substantial evidence test is not a rigorous one but we do not believe it is met where, as here, the factual and legal theory relied upon by the agency to support its determination is completely different from the factual and legal theory upon which the evidentiary hearing was conducted. This seems particularly compelled by the fact that the gravamen of the theory now urged to be supported by substantial evidence is the elusive question of "pretext," a question never considered to be in issue when the factual record was being made.

■ The Board argues that if we do not believe that there is substantial evidence for its "pretext" theory that we should remand for the Board to take additional evidence. We decline to do so. The charge upon which the administrative proceeding

was conducted before the ALJ was not supported in fact or law, and the appropriate disposition is accordingly to vacate the Board's decision and deny enforcement of its order.

Accordingly, the petition to have the order set aside is GRANTED; the petition for enforcement is DENIED.