Robert O. McDONNELL,
Plaintiff-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas Department of Corrections,
Respondent-Appellee.

No. 80–1728.

United States Court of Appeals,
Fifth Circuit.

Jan. 25, 1982.

---

248

Robert G. Clark, Stair & Clark, Houston, Tex., for plaintiff-appellant.

Gilbert J. Pena, Douglas M. Becker, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before CLARK, Chief Judge, GOLD-BERG and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

On December 5, 1947, Robert O. McDonnell pleaded guilty to five counts of robbery by assault and was sentenced to fifty years in the Texas Department of Corrections. He was released on parole in 1964. His parole was revoked in 1971 after his conviction in an unrelated case. At present, McDonnell is incarcerated in the federal

penitentiary in Leavenworth, Kansas. Texas has issued a detainer on McDonnell which requires him to return to the Department of Corrections to serve the remainder of his fifty year sentence after he is released from Leavenworth.

In 1973, McDonnell filed a writ of habeas corpus in federal district court alleging that his 1947 convictions were entered without benefit of counsel. This petition was dismissed without prejudice for failure to exhaust state remedies. McDonnell then petitioned the Texas courts for relief, but such relief was denied without written order in 1976. Two years later, McDonnell returned to federal court with the present petition. On January 28, 1980, the district court dismissed McDonnell's petition under Rule 9(a) [1] of the Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254 (1977), finding that McDonnell had delayed unreasonably in filing his petition and that the delay had prejudiced the state in its ability to respond. It is from this dismissal that McDonnell appeals.

*I. Characterizing a Rule 9(a) Proceeding*

Before we review the judgment below, it is essential to characterize the procedural stance of a Rule 9(a) dismissal so as to set the proper standard of review and, ultimately, the appropriate disposition of this appeal.

Rule 9(a) provides:

A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the existence of reasonable diligence before the circumstances prejudicial to the state occurred.

[1] Many of the Rules Governing § 2254 Cases contain procedural directives. *See, e.g.*, Rules 3, 7(a), 8(a), 28 U.S.C. foll. § 2254. Rule 9(a), however, contains no such directives. Although the rule speaks in terms of "dismissal," it does not prescribe the specific procedures through which such a result may obtain. Rule 4 of the Rules Governing § 2254 Cases permits the "summary dismissal" of habeas corpus petitions, and there is nothing in Rule 9(a) to indicate that the dismissal it authorizes may not be entered summarily. Indeed, one of the purposes of the rule is to alleviate the burden imposed upon courts through protracted hearings in cases where they are not justified. The Rule authorizes the speedy disposition of delayed petitions without resorting to a full consideration of the merits of the claims. The developing case law shows that summary dispositions without hearings are permissible and quite common under Rule 9(a). *See, e.g., Henson v. Estelle*, 641 F.2d 250 (5th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 603, 70 L.Ed.2d 593 (1981); *Davis v. Adult Parole Authority*, 610 F.2d 410 (6th Cir. 1979); *Ellis v. Mabry*, 601 F.2d 363 (8th Cir. 1979).

The procedures to be followed in the summary dismissal of Rule 9(a) cases, however, have not been explained by the Rules Governing § 2254 Cases or the case law. When these rules are otherwise silent, Rule 11 compels us to follow the Federal Rules of Civil Procedure in disposing of habeas corpus petitions. We turn, then, to the application of those rules.

The Rules of Civil Procedure reveal two mechanisms by which a habeas petition can be summarily disposed of on Rule 9(a) grounds. The first, Rule 12(c), permits judgment on the pleadings. This device is of little practical use, particularly in Rule 9(a) cases, because by its terms the court may consider only the pleadings in rendering judgment. If the party opposing the judgment pleads facts contradictory to those alleged by the moving party, the motion must be denied. 10 C. Wright and A. Miller, *Federal Practice and Procedure*

---

1. The Order of Dismissal actually states that "Respondent's Motion to Dismiss under Rule 9(*b*) is GRANTED;" however, both the Respondent's Motion and the Magistrate's Recommendation on which the Order was based, show clearly that the dismissal was issued pursuant to 9(*a*).

§ 2713 (1973). And if the court considers any evidence outside the pleadings, Rule 12(c) requires that the case then be disposed of pursuant to Fed.R.Civ.P. 56 which governs motions for summary judgment.

■ The second procedural device that can be used in Rule 9(a) cases, therefore, is the summary judgment under Rule 56. Pursuant to that rule, either party may move for judgment at any time and may submit to the court extraneous evidence in support of his or her motion. Opposing parties must be given an opportunity to respond in the same manner. The court then considers all the evidence before it to determine whether there exist any genuine issues of material fact and, if not, whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

The manner in which the district court handled McDonnell's petition closely resembles the situation where a motion for judgment on the pleadings is converted into a Rule 56 motion for summary judgment. After McDonnell filed his petition, the court issued an Order to Show Cause why the petition should not be granted. The state responded to the Order with a Motion to Dismiss and Answer in which it raised the Rule 9(a) defense as well as challenges to the merits of McDonnell's claim. The state later filed a Supplement to Motion to Dismiss and Answer to which it attached documentary evidence in support of its 9(a) motion. Relying upon this extraneous evidence, the Magistrate found that the state had been prejudiced as a result of McDonnell's delay and recommended dismissal. The district court adopted the Magistrate's findings and entered judgment accordingly. In its Final Judgment, the district court stated that it dismissed the case on the *pleadings*; however, it is clear from the Magistrate's report, upon which the court

relied, that extraneous evidence was considered along with the pleadings. Thus, regardless of the terminology employed in the judgment, it was actually a summary judgment and not a dismissal on the pleadings.[2]

As we review this case on appeal, then, we treat the judgment below as a Rule 56 summary judgment, but with the overtones required by Rule 9(a).[3]

When a district court rules on a motion for summary judgment, all reasonable doubts must be resolved in favor of the party opposing the motion. If there are unresolved factual issues, the motion must be denied. If there are no factual issues to be resolved, the court must decide whether the movant is entitled to judgment as a matter of law. *Casey Enterprises, Inc. v. American Hardware Mutual Insurance Co.,* 655 F.2d 598, 602 (5th Cir. 1981).

## II. The Components of a Rule 9(a) Dismissal

### a. Substance

■ Rule 9(a) is a relatively new addition to our ever-increasing body of habeas corpus law. The rule was enacted by Congress in 1976[4] to discourage the filing of stale habeas claims. It was not meant to change pre-existing law; rather, its purpose was to codify the equitable doctrine of laches which had been applied in habeas cases in the past, although not under that name and not in a summary fashion. *See, e.g., Rhodes v. Estelle,* 582 F.2d 972 (5th Cir. 1978). *See also Davis, supra,* at 415.

Because of our firm commitment to the "extraordinary writ" of habeas corpus as a cure for constitutionally defective convictions, prior to the enactment of Rule 9(a) courts did not dismiss petitions for laches. It was thought that to do so would eviscer-

---

**2.** In fact, at oral argument, counsel for the state conceded that although the judgment was styled as a dismissal, it more closely resembled a summary judgment.

**3.** In *Hillery v. Sumner,* 496 F.Supp. 632 (E.D. Cal.1980), the court considered whether Rule 9(a) was *sui generis* and therefore not subject

in its application to the ordinary procedural rules. The court concluded that Rule 9(a) was the equivalent of a laches defense and as such it raised factual issues that could not be resolved on the pleadings alone.

**4.** Pub.L. No. 94–426, § 2(7), (8), 90 Stat. 1335 (Sept. 28, 1976).

ate the very purpose of the "extraordinary writ." Instead, the elements of laches—unreasonable delay and prejudice—were incorporated into the court's consideration of the merits of the petitioner's claim, thereby increasing his burden of proof. If the petitioner had delayed unreasonably in filing his claim and the delay resulted in prejudice to the state his case was not automatically lost but was weakened. The proof he offered, as well as his good faith and credibility, would be given less weight than if the claim had been timely filed. Thus, petitions were denied because the petitioners failed to meet their burdens of proof, not because the petitions were delayed. *Davis, supra* at 415.

This Court's disposition of *Rhodes v. Estelle, supra,* a pre-Rule 9(a) case, is an example. In *Rhodes,* the petitioner challenged a twelve year old conviction alleging ineffective assistance of counsel. During the intervening years, the records of the proceeding had become unavailable and the judge and petitioner's attorney had died. The only evidence presented by the petitioner was his own uncorroborated statements as to the actions of his attorney. Because Rule 9(a) was not yet in effect, the petition could not be dismissed for laches. Nevertheless, we concluded that the evidence before us was insufficient to prove petitioner's claim.

■ Because Rule 9(a) authorizes the summary disposition of habeas corpus petitions on grounds unrelated to the constitutional claims, its application necessarily must be limited to avoid the abrogation of the very purpose of the writ. Congress chose to accomplish such limitation in part by imposing the burden of proving laches upon the state. Thus, while Rule 9(a) somewhat circumscribes the availability of the habeas writ to petitioners, it does so only when the state is able to prove laches.

As originally proposed by the Supreme Court, Rule 9(a) provided that a petition filed more than five years after the conviction was presumed to have prejudiced the state. Unless the petitioner rebutted the presumption, the petition was dismissed.

Congress found this provision too harsh and deleted it from the Rule. H.Rep.No. 1471, 94th Cong., 2d Sess. 1, 5 *reprinted in* [1976] U.S. Code Cong. & Ad. News 2478, 2481.

As it ultimately was passed, Rule 9(a) requires the state to prove that it has been prejudiced in its ability to respond to the habeas petition as a result of the petitioner's delay in filing. "[The] delay alone is no bar to federal habeas relief.... In order to prevail on a laches claim respondent must make *a particularized showing of prejudice.*" (emphasis added). *Paprskar v. Estelle,* 612 F.2d 1003, 1007–08 (5th Cir. 1980), *cert. denied,* 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 110 (1980) (general allegation of prejudice is insufficient to meet state's burden under Rule 9(a). *See also United States ex. rel. Barksdale v. Blackburn,* 610 F.2d 253, 260 (5th Cir. 1980), *vacated on other grounds,* 639 F.2d 1115 (5th Cir. 1981) (en banc); *Jackson v. Estelle,* 570 F.2d 546, 547 (5th Cir. 1978). In addition, the state must show that the prejudice was caused by the delay. Rule 9(a); *Mayola v. State of Alabama,* 623 F.2d 992, 999 (5th Cir. 1980); *cert. denied,* 451 U.S. 913, 101 S.Ct. 1986, 68 L.Ed.2d 302 (1981); *Baxter v. Estelle,* 614 F.2d 1030 (5th Cir. 1980), *cert. denied,* 449 U.S. 1085, 101 S.Ct. 873, 66 L.Ed.2d 810 (1981); *Paprskar v. Estelle, supra. See also Davis, supra* at 416.

■ If the state makes a prima facie showing that it has been prejudiced as a result of the petitioner's delay, the burden shifts to the petitioner to show either that the state actually is not prejudiced or that petitioner's delay "is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred." Rule 9(a), 28 U.S.C. foll. § 2254. This provision is often the most critical aspect of a Rule 9(a) case since it requires careful attention to the facts surrounding each case. The ultimate disposition of this issue is "based upon the reasonableness of the party's behavior under the circumstances." *Baxter, supra* at 1034. *See also Davis v. Adult Parole Authority,* 512 F.Supp. 533 (S.D.Ohio 1981); *Smith v. Anderson,* 505 F.Supp. 642 (E.D.Mich.1980).

■ Finally, if the state is unable to prove its 9(a) defense, then the court must reach the merits of the petitioner's claim. If it develops upon adequate procedure that the state has failed to prove laches this does not mean that it will fail ultimately in the habeas proceeding. The burden of proof remains upon the petitioner throughout the proceeding. As in the *Rhodes* case, the evidence available so many years after the conviction might be insufficient to prove the petitioner's case.

Here the transcript is alleged to be missing, the court reporter's notes are seemingly unavailable, and the presiding judge is dead. The only evidence of whether McDonnell had counsel is his uncorroborated testimony that he did not, and a copy of the docket sheet which, at best, is ambiguous. As the Magistrate noted in his Recommendation to the district court, memories fade over time, and McDonnell's recollection of the 1947 events may be less credible than it would have been if offered in 1963. Thus, it could be appropriate for the district court to deny the petition on the merits but inappropriate to do so under Rule 9(a).

### b. Procedure

As noted above, Rule 9(a) contains no procedural directives. The Rule has been interpreted to permit final determinations without full hearings, but the Federal Rules of Civil Procedure nevertheless make step-by-step requirements leading to summary disposition. In this case, the state originally moved for a dismissal of McDonnell's petition. Because the district court considered extraneous evidence in ruling on the motion, the proceeding was converted into a motion for summary judgment. At this action, Fed.R.Civ.P. 56 became applicable.

Rule 56 permits a party to move for summary judgment at any time and to provide the court with evidence supporting its motion. Subsection (c) of the Rule requires that the opposing party to be served with the motion at least ten days prior to the scheduled hearing. Rule 56 does not speak in terms of notice, nor does it define the consequences of failure to serve the motion timely. We have ruled, however, that the ten day service requirement is actually a notice provision. If it is breached, summary judgment may not issue. *Oaxaca v. Roscoe*, 614 F.2d 386 (5th Cir. 1981).

In *Hickey v. Arkla Industries, Inc.*, 615 F.2d 239 (5th Cir. 1980), we reversed a grant of summary judgment when the opposing party was not given ten days notice. In that case, the defendant filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6) but added an accompanying brief which incorporated materials not contained in the pleadings. The plaintiff's response to the motion to dismiss added further extraneous materials. The court then rendered judgment based on the pleadings, briefs, and the extraneous materials. We reversed the judgment, holding that the trial court's consideration of extraneous material converted the 12(b)(6) motion into a motion for summary judgment. As such, the plaintiff was entitled to ten days notice. Since no notice had been given, the judgment should not have issued. That the plaintiff had been permitted a response to defendant's 12(b)(6) motion was not enough. Because of the finality of a summary judgment, the plaintiff should have been given notice that such a judgment might issue. We held that in responding to defendant's 12(b)(6) motion the plaintiff had the right to believe he was answering a challenge to his pleadings only. He could not have anticipated that the court would consider the extraneous material since, under Rule 12(b)(6), it could not do so.

[12] The Advisory Committee Note to Rule 9(a) also suggests imposing a notice requirement in Rule 9(a) cases. The Note urges that before the court dismisses a petition pursuant to 9(a), it should afford the petitioner an opportunity to explain his or her apparent abuse of the writ. If, after examining the petition and the state's return, it appears that there is a high probability the petition will be barred by Rule 9(a), the court should so notify the petitioner. Appended to Rule 9(a) is a form provided by Congress to be given to the petitioner. The form notifies the petitioner that

the court is considering a dismissal subject to Rule 9(a) and that failure to complete the form will result in automatic dismissal. It specifically calls upon the petitioner to explain why his or her delay has not been prejudicial and why the delay is excusable. Further, it admonishes the petitioner to include all the facts necessary to support the response. Together, the strictly enforced notice requirement of Fed.R.Civ.P. 56 and the suggestions and form appended to Rule 9(a) create a procedural framework for the disposition of Rule 9(a) cases.

### III. Disposition of the Appeal

Having set forth the framework within which to consider this appeal, we now proceed to its disposition. We find that the judgment of the district court must be reversed because of substantive and procedural errors.

We begin with the substantive error. The district court's dismissal of—or summary judgment against—McDonnell's petition had to have been based upon a conclusion that there remained no material issues of fact to be resolved and that as a matter of law the state prevailed. In the context of a Rule 9(a) case, this means that the court found: (1) the state had been prejudiced, (2) as a result of petitioner's delay, (3) and petitioner had not acted with reasonable diligence *as a matter of law*.

To prove that it was prejudiced by the delay, the state offered documentary evidence, appended to its supplemental pleading, which claimed particularized incidences of prejudice. Only one of the documents, a letter stating that the judge who presided at the 1947 trial died in 1967, can be taken as showing prejudice caused by petitioner's delay; the other documents fail to do so. This one document is not enough to justify summary judgment because prejudice resulting from the judge's death occurs only if there are no other sources from which the state can obtain the requisite information to counter the petitioner's claim.

The other documents submitted by the state were two letters which were not adequate to establish the facts necessary to show prejudice. The first was a letter from the Harris County, Texas District Attorney's office stating that the records from McDonnell's 1947 trial are unavailable because they were damaged when the facility in which they were stored suffered a collapsed roof sometime "in the late 50's and early 60's." Because of the obvious importance of these records to the state in rebutting McDonnell's allegation that he was not provided counsel, the court found that their absence substantially prejudiced the state. While we agree that the loss of these records is prejudicial, we cannot say that the state proved that it was McDonnell's delay which brought about the prejudice.

■ Although McDonnell was convicted in 1947, he could not have been aware of his right to counsel until 1963 when the Supreme Court handed down *Gideon v. Wainwright*.[5] As the state concedes, this change of law excuses McDonnell's delay from 1947 to 1963. Therefore, to hold that McDonnell's delay prejudiced the state's ability to respond, the state must prove that the records were destroyed after 1963. Under the rule, prejudice alone is insufficient; the prejudice must result from McDonnell's delay. *Mayola, supra* at 999; *Baxter, supra* at 1034; *Paprskar, supra* at 1007. The state must prove that had McDonnell filed for relief within a reasonable amount of time after 1963, the records would have been available. Unless it is able to do so, the petition may not be dismissed under Rule 9(a) nor may a summary judgment issue in favor of the state under Fed.R. Civ.P. 56.

The letter states only that the warehouse collapsed in the late 1950's or early 1960's. This vague and general claim is lacking in specificity to establish that prejudice arose after *Gideon* in 1963. The state is in a far better position than is McDonnell to pinpoint the actual date of the records' de-

---

**5.** 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). *See Bouchillon v. Estelle*, 628 F.2d 926, 929 (5th Cir. 1980), in which we refused to apply Rule 9(a) to a similar claim because the petitioner could not have known of his claim until 1963.

struction. If the state intends to use this evidence as proof of prejudice, it may do so; however, the meager showing it has made thus far cannot satisfy the burden of proof *as a matter of law*. Furthermore, the very same letter refers the state to the District Clerk's office, stating that his records of McDonnell's trial may be available. It is possible, of course, that these records, too, are missing; however, the state has made no such showing. Whether they are available or are missing, the burden is upon the state to ascertain the situation to support its claim of prejudice.

The other letter submitted by the state was signed by the current Harris County court reporter who stated that he was unable to ascertain the name of the 1947 reporter who served in McDonnell's trial. The court accepted this letter as proof of prejudice to the state. Again, however, the court overlooked a critical point: the state must prove that the prejudice occurred after 1963 or else McDonnell's delay may not be held responsible. The letter from the court reporter says that no records containing the names of court reporters were kept. This indicates that even in 1963, that information could well have been unavailable since sixteen years had elapsed. If so, whatever prejudice resulted to the state cannot be attributed to McDonnell's delay.

We have already stated that it is proper for a district court to dispose of a Rule 9(a) motion in summary fashion. In order to do so, however, the court must have before it a sufficient quantity of conclusive evidence on which to base its decision. *Henson v. Estelle, supra* (reversing grant of habeas corpus when district court did not have sufficient evidence before it on which to base its 9(a) ruling favorable to petitioner); *Ellis v. Mabry, supra* (district court must make the necessary evidentiary findings before it can dismiss under Rule 9(a)). A court is not required to hold a hearing to gather the necessary evidence, nor is it required to undertake extensive discovery, if it is able to obtain the information through pleadings or documentary submissions. If the evidence provided by the parties is insufficient, however, the court must refuse a summary ruling and obtain the necessary facts, through discovery techniques or a hearing. *Henson v. Estelle, supra* at 253; *Ellis v. Mabry, supra* at 365.

■ In reversing the trial court's judgment on the 9(a) motion, we do not imply that the events claimed as prejudicial by the state could not prove prejudice. And we certainly make no predictions as to the conclusion a court might reach on the merits of McDonnell's claim, should the state ultimately fail to prove its 9(a) defense. We hold only that the evidence submitted to show prejudice does not justify the finding of prejudice by the district court in its summary judgment.

If, upon remand, the state is able to establish its allegations by adequate factual evidence, it would be proper for the court to conclude that the state had been prejudiced. *See* cases in which petitioner's delay is not justified and prejudice is shown, *e.g., Bouchillon, supra* (when state proves that judge and prosecutor have died, transcript is unavailable, and witness' memory has faded, Rule 9(a) dismissal is appropriate); *Baxter, supra* (when judge is dead and transcript is missing, Rule 9(a) bars petition). Once there is a prima facie showing that the state has been prejudiced as a result of McDonnell's delay, the burden shifts to McDonnell to prove that either the state was not prejudiced or his actions were reasonably diligent. If he is unable to do so, the petition may be dismissed.

■ The doctrine of laches, as codified in Rule 9(a), is an equitable one. It is fact-oriented and its application varies from case to case. Therefore, its resolution in a summary proceeding is often difficult.[6] While it is clear that the purpose of Rule 9(a) is to permit summary dismissals of stale claims, such dispositions are drastic and final. They should be entered only when the evidence before the court fully

---

**6.** *See* 5 C. Wright and A. Miller § 1277 (1969) arguing that laches is so factually-dependent that it should never be decided on a motion to dismiss.

satisfies the standards required in the rule. Sometimes a more complete development of the facts through a hearing is necessary. *Henson v. Estelle, supra.*

Finally, we turn to a procedural error barring affirmance of the judgment below. Our discussion in Part II above details the procedures under Fed.R.Civ.P. 56 to be followed in Rule 9(a) cases. Because these procedures were not followed in the district court, we must reverse its decision.

Under Fed.R.Civ.P. 56, a party must be given ten days notice that summary judgment may be entered against him, and an opportunity to respond, before such judgment may issue. In the context of a Rule 9(a) case, Congress has provided courts with a form which conveys the appropriate notice and compels a response.

In the case at bar, no complying notice was given to McDonnell. Counsel for the state argued that McDonnell's Response to Respondent's Motion to Dismiss and Answer and Supplemental Motion to Dismiss and Answer and his Objections to Magistrate's Recommendations satisfy the requirements of Rules 56 and 9(a) because he was given an opportunity to respond to the state's allegations. The state's argument is not persuasive. The notice requirement in summary judgment proceedings means that the opposing party must be notified specifically of the fact that the court will be making a final disposition of the case in the form of a summary judgment. *Hickey v. Arkla Industries, Inc., supra.* That McDonnell was entitled to and did file a response to the state's pleadings and the Magistrate's Recommendations does not abrogate the notice requirement. When McDonnell filed those documents, he believed, just as did the plaintiff in *Hickey,* that he was responding to a motion to dismiss based on the pleadings. Neither the state's pleadings nor the Magistrate's report referred to the possibility of a summary judgment. As such, all he had to do was defend his pleadings against the state's pleadings. Once the court decided to consider more than just the pleadings, McDonnell had to be notified that such a determi-

nation was being made and given an opportunity to respond to the extraneous evidence submitted by the state. McDonnell was given no such notice, despite the mandate of Rule 56 and the form provided by Rule 9(a). Accordingly, we must reverse the judgment.

The judgment of the district court is REVERSED and the cause REMANDED for further development of the facts in support of and opposed to appellee's motion for summary judgment, after appellant has been given proper notice under Rule 56 of the Fed.R.Civ.P. in the form provided by Rule 9(a) of the Rules Governing Section 2254 Cases.

REVERSED AND REMANDED.