Ernest THOMAS, Petitioner–Appellant,

v.

Richard L. DUGGER,* Robert A. Butterworth, Attorney General, State of Florida, Respondents–Appellees.

Nos. 84–5348, 86–5416.

United States Court of Appeals, Eleventh Circuit.

June 7, 1988.

---

* The caption has been altered pursuant to Fed.R. App.P. 43(c) to reflect succession of RICHARD L. DUGGER, to Secretary Florida Department of Offender Rehabilitation; and ROBERT A. BUTTERWORTH, to Attorney General of the State of Florida.

Sheryl J. Lowenthal, Coral Gables, Fla., for petitioner-appellant.

Carolyn M. Snurkowski, Michael J. Neimand, Asst. Attys. Gen., Dept. of Legal Affairs, Miami, Fla., for respondents-appellees.

Before RONEY, Chief Judge, FAY and JOHNSON, Circuit Judges.

PER CURIAM:

Ernest Thomas, a Florida state prisoner, is serving a life sentence imposed after a bargained plea of guilty to first-degree murder. He appeals the district court's denial of his 28 U.S.C.A. § 2254 petition for a writ of habeas corpus which challenged the voluntariness of his guilty plea, tendered with retained counsel, to the state trial court on March 26, 1973. We affirm.

This consolidated appeal comes before the Court after a remand to the district court, on request of the State, to make factual findings and conclusions of law on the issue of laches and, if necessary, on the merits of Thomas' claims.[1] On remand, the district court, adopting the Magistrate's Report and Recommendation entered after an evidentiary hearing, held that laches barred Thomas' claim that because of his use of psychotropic medications, his plea was drug-induced. The court also held that

---

1. The State's motion to relinquish jurisdiction for remand to the district court, filed on November 9, 1984, asked that:

The instant case should be remanded to the District Court with direction to make findings of fact and conclusions of law as to both the laches issue and the merits of the claim and this Court should retain jurisdiction of this appeal. *Sellers v. Estelle,* 571 F.2d 1314 (5th Cir.1978).

On November 28, 1984, this Court entered the following order:
By the Court:
Appellee's motion to remand this appeal to the United States District Court for the Southern District of Florida is granted.
*Thomas v. Wainwright,* No. 84–5348 (11th Cir. 1984).

the record refuted Thomas' claim that his plea was coerced by counsel's alleged promise of an early parole. The denial of relief on these grounds is the subject of the appeal in Case No. 84–5348.

The appeal in Case No. 86–5416 involves the district court's disposition of two issues concerning the voluntariness of Thomas' plea which surfaced initially in the evidentiary hearing held on the remand from this Court. The *first* issue, concerning the neutrality of the trial judge, arose after Thomas' mother and sister testified that during the March 1973 plea colloquy, the state trial judge remarked to the effect that: "[i]t is just too bad that the death penalty isn't in now, because I'd like to give you the electric chair." The *second* issue, after Thomas' trial attorney testified, arose concerning whether Thomas agreed to a plea of guilty only to second-degree murder and not to first-degree murder. The district court dismissed the former claim without prejudice because of lack of exhaustion, and did not directly address the latter claim.

### Case No. 84–5348

### Drug–Induced Plea

■ Rule 9(a) of the Rules Governing Section 2254 Cases provides that a petition

2. Delayed Petitions. A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

28 U.S.C.A. § 2254, Rule 9(a).

3. What follows is a chronology of Thomas' efforts to gain relief from his conviction and sentence:

1. Thomas' first motion under Fla.R.Crim.P. 3.850 was filed on June 24, 1980. The motion raised two grounds for relief: (1) that his plea was drug-induced, and thus involuntary; and (2) that his counsel was ineffective because he knew of Thomas' drugged state, but let the plea hearing proceed in spite of this knowledge. This motion was denied by the trial court on July 1, 1980 and this denial was affirmed. *Thomas v. State,* 390 So.2d 104 (Fla. 3d DCA 1980), *cert. denied,* 399 So.2d 1146 (Fla.1981).

may be dismissed if delay in the filing has prejudiced the ability of the State to respond, unless the petition is based on grounds of which petitioner would not, after due diligence, have had knowledge.[2] This Rule, which is based on the equitable doctrine of laches, permits dismissal of a petition upon a showing that: (1) the State has been prejudiced in its ability to respond to the petition; (2) this prejudice resulted from the petitioner's delay; and (3) the petitioner has not acted with reasonable diligence as a matter of law. *McDonnell v. Estelle,* 666 F.2d 246, 253 (5th Cir.1982), *cited with approval in Hill v. Linahan,* 697 F.2d 1032, 1034 (11th Cir.1983).

■ Rule 9(a) does not bar a petition based simply on delay. The Rule requires a particularized showing of prejudice by the State. *Hill,* 697 F.2d at 1035. It was the lack of such a showing that caused this case to be remanded previously.

The State made such a showing on remand. The guilty plea was entered on March 26, 1973. Thomas' first collateral attack was filed in state court on June 24, 1980. The petition for federal habeas corpus relief was filed on November 5, 1981.[3]

■ Thomas claims that his guilty plea was involuntary because he was under

2. Thomas filed a second motion pursuant to Fla.R.Crim.P. 3.850 on April 13, 1981. In this motion, Thomas raised three claims: (1) that his plea was wrongly induced by counsel's promise that he would receive an early parole date; (2) that his counsel exploited his drugged state and was therefore ineffective; and (3) that the plea hearing was highly irregular, as evidenced by Thomas' many contradictory statements in response to the court's inquiries. This motion was denied by the trial court and the denial was affirmed. *Thomas v. State,* 402 So.2d 18 (Fla. 3d DCA 1981).

3. On October 5, 1981, Thomas filed a habeas corpus petition with the state appellate court, claiming that the court had applied the wrong standard of review to his case. This petition was denied on October 9, 1981.

4. On November 5, 1981, Thomas filed a petition for writ of habeas corpus in federal district court, which claimed relief on three bases: (1) that his plea was drug-induced; (2) that he was promised an early parole date by his counsel; and (3) that his counsel was ineffective. Adopting the Magistrate's

medication prescribed and administered by medical personnel in the Dade County Jail at the time his plea was entered. According to Thomas, he slipped samples of the drugs to his mother when he was in jail and she had them identified by a doctor as Etrafon and Darvon. During the evidentiary hearing before the Magistrate, Thomas' expert testified that these drugs would render an individual incompetent to enter a plea.

At the evidentiary hearing, the parties stipulated that Thomas' medical records from the Dade County Jail were unavailable. These records, which presumably would have been available had Thomas brought his claim earlier, would appear critical to the State's ability to defend against Thomas' claim. Without these records, the only evidence of the type of drugs taken by Thomas is the testimony of Thomas' mother. There is absolutely no evidence as to the dosage and frequency of the drugs Thomas was taking and no evidence of how Thomas reacted to these drugs. The absence of this critical data renders impossible effective cross-examination by the State of Thomas, his family and his expert. By showing that Thomas' medical records have been lost or destroyed with the passage of time, the State has demonstrated prejudice sufficient to invoke the dismissal permitted by Rule 9(a).

### Promise of Early Parole

■ The district court denied habeas corpus relief on Thomas' claim that his guilty plea was coerced because it was induced by trial counsel's promise of an early parole.

At the plea proceeding, the prisoner stated that he had not been promised anything in return for his plea of guilty, and that he understood he was receiving a sentence of life imprisonment. At the evidentiary hearing before the Magistrate, Thomas' trial counsel testified that he would never promise a client when he would get out of prison on parole. He then said:

> The only thing, in fairness to the defendant, I would tell him, and may have told Mr. Thomas, as a matter of fact, is that from my experience, if a person were to maintain good behavior in prison and show a positive reaction to the prison system, such as being involved in church affairs and classes, and things such as that, that I have known persons to have been paroled in as 'little' as seven years on a life sentence.
>
> But I couldn't guarantee that would be done in his case. It would [be dependent] upon his own behavior, over which I had no control.

Thus, the district court correctly held that the evidence does not support Thomas' contention that his guilty plea was coerced on a guarantee of early parole.

### Case No. 86–5416
### Plea Colloquy

Thomas contends that the state trial judge's remark during the March 26, 1973 plea colloquy that she would give Thomas the electric chair if the death penalty were available demonstrates the involuntariness of his plea because the judge had predetermined his guilt. After this claim emerged on remand, Thomas moved to abate the

Report and Recommendation, the district court denied the petition on December 20, 1983, without holding an evidentiary hearing.

5. After this Court remanded the case on November 28, 1984, an evidentiary hearing was held by Magistrate Nimkoff on September 20, 1985. Magistrate Nimkoff entered a Report and Recommendation on December 27, 1985, but because he resigned before the district court ruled on the case, the case was reassigned to Magistrate Kyle. Magistrate Kyle, relying on the transcript of the evidentiary hearing held before Magistrate Nimkoff, entered a Report and Recommendation denying Thomas relief on the claims

that his plea was drug-induced and that he was persuaded to enter a plea on counsel's promise of early parole. The Magistrate recommended that the plea colloquy claim which arose during the evidentiary hearing be dismissed without prejudice for lack of exhaustion. The district court adopted the Magistrate's Report and Recommendation on May 15, 1986.

6. During the pendency of this appeal, Thomas filed a third motion for relief under Fla.R. Crim.P. 3.850, this time raising the plea-colloquy claim. The trial court denied this motion and on July 22, 1986, this ruling was affirmed. *Thomas v. State*, 492 So.2d 376 (Fla. 3d DCA 1986).

federal proceedings while he exhausted the claim in state court. The district court refused to abate the case and instead dismissed it without prejudice.

■ The district court properly handled the plea colloquy claim. As the court observed, this claim was distinct from the questions presented on limited remand. The law is settled that a district court should not assert jurisdiction over matters that are without the scope of a mandate. *See Litman v. Massachusetts Mutual Life Insurance Co.*, 825 F.2d 1506 (11th Cir. 1987) (*in banc*), *cert. denied*, — U.S. ——, 108 S.Ct. 700, 98 L.Ed.2d 652 (1988).

■ The parties could have petitioned this Court to expand the scope of the remand, or the district court itself could have certified a need to expand the scope of the remand. It was well within the discretion of the district court, however, to dismiss the claims, without prejudice, a disposition that would have necessarily resulted if this Court had refused a request to expand the mandate.

The disposition of this matter is complicated by the fact that during the pendency of this appeal, Thomas' claim was fully litigated and exhausted in the Florida courts, where he was denied relief. Thomas argues that since his claim is now exhausted, this Court should remand the case and allow amendment of the petition to add the claim. Thomas expresses concern that if he is required to file a second petition to raise the claim, the State will argue abuse of the writ. Thomas did not submit an amended petition in the district court, and it is doubtful whether a remand to allow amendment at this stage of the proceedings would avoid the possible application of abuse of the writ principles. In any case, a remand by this Court to allow amendment would circumvent established procedures for bringing collateral challenges. Thomas is free to refile the claim in federal court and if the State argues abuse of the writ, Thomas will simply have to show cause why the claim was not raised in the first petition.

*First or Second–Degree Murder*

■ Thomas contends that he agreed to plead guilty only to second degree murder and not first degree murder. Since the state trial court entered the plea of guilty as to first-degree murder, he argues that this tends to show: (1) the involuntariness of the plea; and (2) ineffective assistance of counsel. Thomas, however, never filed an amended petition in the district court to assert this claim for relief. While the district court did not directly rule on this claim, it is clear that the court could not have addressed the merits because the claim has never been presented to the Florida courts.

The evidence on this issue is confusing and incomplete. Defense counsel's file notes reflect that the plea was to be entered as to second degree murder. Defense counsel's testimony, however, is ambiguous as to whether he agreed to and understood that Thomas' plea was to second-degree murder or to first-degree murder, possibly in exchange for the State's agreement not to bring a robbery charge. It is not developed in the record, but Thomas argues that if he had received a life sentence for second-degree murder, instead of first-degree murder, it might make a difference as to when he would be eligible for parole and might impact on the level of custody during incarceration.

As with the other unpleaded issue which arose during the evidentiary hearing, this issue was outside of the scope of the remand from this Court, and given its unexhausted status, was not a proper subject for federal review.

AFFIRMED.

JOHNSON, Circuit Judge, concurring in part and dissenting in part:

I join the majority's affirmance of the district court's judgment regarding three of the four claims on appeal: the drug-induced plea, the promise of early parole, and the plea colloquy issues. I dissent as to the majority's treatment of the fourth claim, the first/second degree murder issue.

What is "confusing and incomplete" needs more careful analysis, not less.[1] The majority delves less deeply into the procedural quagmire than this case allows and requires. Based on the procedural history of this case, I do not join the majority's subsumption of the plea discrepancy issue into the district court's holding on the plea colloquy issue.

The remand by this Court was limited, but it was in fact not as limited as the State has insisted, the district court has assumed, and the majority has accepted. The majority correctly concludes that the plea colloquy issue was outside the scope of this Court's remand. The plea discrepancy issue was, however, not outside the scope of the remand. The district court was clearly erroneous in confining the voluntariness issue on limited remand only to laches and early parole.

The motion that this Court granted in November 1984 was to remand with regard to "the laches issue and the merits of the claim." Because this Court's remand responded to a district court order that adopted a magistrate's report and recommendation which found laches with regard to the full habeas petition, the "merits of the claim" referred to all claims raised in the habeas petition. The plea discrepancy issue was well within the scope of Ground One ("conviction [was] obtained by plea of guilt which was unlawfully induced by coercion") and Ground Five ("can an internally contradictory record of the plea of guilt show full understanding of plea and proceedings by defendant?") of the pro se habeas petition.

The magistrate made no recommendation with regard to the first/second degree issue and only briefly mentioned the issue in the recitation of facts. By adopting the magistrate's report and recommendation in full, the district court neither held on the merits of the plea discrepancy claim, nor found the claim exhausted, nor found the claim barred by laches. Thus, the majority not only incorrectly states that the issue was outside the scope of the remand, but also proceeds to hold for the district court that the claim is flawed by nonexhaustion.

This Court can neither affirm nor reverse the district court on the plea discrepancy claim because there is no holding below to judge. This Court also cannot consider clear or plain error because there is no factual finding below to assess. I would remand this case for the district court's treatment of the plea discrepancy issue.[2]

Whether Thomas pleaded to first or second degree murder is not a trivial matter. In his own words: "Everything dealing with the first degree murder, second degree murder is totally different. Everyone looks at first degree murder as being a premeditated or a felony murder." The disadvantages of a life sentence for first degree murder include: 1) delayed parole eligibility at 120 months instead of 58 months for second degree murder life sentences; 2) lesser chances for work release; and 3) more rigorous custody. Although the parole eligibility issue has been mooted by time, the other incarceration effects remain current.

1. Although Thomas entered a formal plea to first degree murder with a life sentence on March 26, 1973, Thomas argues that he agreed to plead guilty only to second, not first, degree murder. Nowhere in the record does Thomas or anyone else state that Thomas knowingly agreed to plead to first degree murder. At the evidentiary hearing held on remand, Thomas' appointed trial counsel could attest only to explicit agreement to a second degree murder plea. Counsel could find notes documenting only that on March 22, 1973, Thomas agreed to second degree murder with a life sentence. Counsel could find no record and had no recollection of any communication with Thomas about the change from second to first degree murder in the hiatus from March 22 to March 26. Counsel also had no record or recollection that the State rejected a plea of second degree murder. Thomas testified that he could not recall any of the details of his final plea agreement. Thomas maintains that he did not discover that he had pleaded to first degree murder until after the plea proceedings, when he was back in prison.

2. The first aspect to consider is exhaustion. It is not clear from the record whether Thomas' third 3.850 motion raised the plea discrepancy issue. Thomas has the burden of proving exhaustion, but nonexhaustion is an affirmative defense. If a party fails to raise exhaustion and instead argues on the merits, this Court may address the merits of the unexhausted claim. *Westbrook v. Zant*, 704 F.2d 1487 (11th Cir. 1983). In this appeal, the State did not argue

nonexhaustion as to the plea discrepancy issue and instead argued that any issue other than laches and the promise of early parole was outside the scope of the remand.

If nonexhaustion does not bar the claim, the second aspect to consider is laches, which the State generally raised against the voluntariness issue. The district court's discussion of laches as to the drug-induced plea did not cover laches as to the plea discrepancy issue. The plea discrepancy issue appeared as new evidence from the evidentiary hearing and was raised as soon as the discrepancy became evident from the notes and testimony of Thomas' trial counsel at the evidentiary hearing.