**CAMPAS, George, Appellant,**

v.

**ZIMMERMAN, Charles H., Supt.**

No. 87–5449.

United States Court of Appeals, Third Circuit.

Argued Jan. 24, 1989.

Decided May 31, 1989.

Gerald P. Deady (argued), Wilkes–Barre, Pa., for appellant.

Joseph C. Giebus (argued), Asst. Dist. Atty., Dist. Atty.'s Office of Luzerne County, Wilkes–Barre, Pa., for appellee.

Before STAPLETON, MANSMANN and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

This case comes before us as an appeal of the district court's June 22, 1987 order which dismissed defendant George Campas' habeas corpus action as a delayed petition pursuant to Rule 9(a) governing 28 U.S.C. § 2254 cases. Because the record has now been augmented by post argument submissions, and among other issues, a question of exhaustion remains unresolved, we will vacate the district court's order and remand for further proceedings.

## I.

On June 13, 1968, Campas was convicted by the Luzerne County Court of Common Pleas on charges of robbery by accomplice, conspiracy, armed robbery and receiving stolen property. Campas was sentenced to a minimum of six years, six months and one day and a maximum of 22 years.

On July 22, 1985, Campas filed his petition of habeas corpus alleging that: 1) he was denied counsel at his preliminary hearing, a critical step in the criminal proceedings; 2) he was arrested without probable cause; 3) evidence was obtained in violation of the Fourth Amendment; 4) a defective search warrant was issued; and finally, 5) he received ineffective assistance of counsel in that various prior counsel of the defendant did not properly pursue all of his appellate rights. The state district attorney (Luzerne County) moved to dismiss Campas' petition on the grounds that Campas failed to satisfy the requirements of 28 U.S.C. § 2254(d)1–8. At that time, the State did not claim prejudice due to Campas' 17 year delay in filing.

On March 31, 1986, the district court, *sua sponte*, raised the Rule 9(a) question of prejudice resulting from the delay in Campas' habeas filing.[1] Campas responded that the burden of prejudice under Rule 9(a) should be properly placed on the State.

On May 21, 1986, the district court ordered the State to explain how it had been prejudiced. On May 30, 1986, the State responded with an affidavit stating that the prosecutor who had prosecuted Campas had died. Campas countered that the death of the prosecutor did not constitute prejudice since other witnesses were alive and the issues which Campas had raised did not turn upon the availability of the prosecutor.

On September 26, 1986, the district court ordered the State to respond once again to Campas' arguments. The State answered with an affidavit averring, among other things, that the chief prosecution witness, the public defender who defended Campas and the magistrate who conducted the preliminary hearing were all dead; that no transcript of the preliminary hearing exist-

---

1. Rule 9. Delayed or Successive Petitions (governing 28 U.S.C. § 2254 cases):

   (a) Delayed petitions. A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

ed; and that it was unable to locate the whereabouts of the trial transcript.

David Kurtz, Campas' former counsel, responded with a letter which attached photostatic copies of all of the docket entries from the Court of Common Pleas. He argued that the documents established the merit of Campas' habeas petition. Kurtz, also indicated that a trial transcript would be filed as soon as it was reproduced.

On March 9, 1987, the district court requested detailed briefs on whether Campas had overcome the State's particularized showing of prejudice. (App. 14).

On March 17, 1987, the State filed another affidavit in which it reiterated its inability to find any state court records and again asserted that the key figures in the 1968 prosecution of Campas were dead.

On March 30, 1987, Kurtz filed an affidavit again alluding to a tape recording of the *preliminary hearing* and asserted, that according to information received by Campas' family, the file of Campas' state court criminal proceedings was available on microfilm at the Luzerne County Court House. (App. 49).

The district court in its June 22, 1987 opinion, referred to Kurtz' affidavit stating: "affiant [Kurtz] believes that although almost all of the key witnesses are dead, or unable to recall specific details regarding petitioner's case, a certified copy of the file will substantiate petitioner's [Campas'] claims...." (App. 15).

Kurtz' affidavit did not explain what the file would contain. Kurtz also maintained that Campas was financially unable to reproduce the records and that the State should shoulder that expense.

Based on these assertions by Campas, the district court on June 22, 1987 dismissed Campas' petition holding that Campas had failed to overcome the State's particularized showing of prejudice as required by 9(a) of the Rules governing 28 U.S.C. § 2254 cases. The district court ruled that: 1) Campas had only made unsubstantiated and vague claims that a tape recording of the preliminary hearing might exist and that State records allegedly located in the Luzerne County Court House might eliminate or alleviate the prejudice to the State; 2) Kurtz, Campas' counsel, had never informed the court *where* the purported tape recordings were located or what efforts he had made to obtain them; 3) from the record it appeared Kurtz himself had not gone to the Court House to review the records; 4) no portion of Campas' State criminal file was referred to in support of Campas' contentions; and, 5) neither Campas nor his family had submitted financial documentation to substantiate their claim that they could not pay for the cost of reproducing the record and documents.

Campas' present appeal is from that order.

## II.

[redacted] In reviewing a dismissal of a habeas corpus petition dismissed under Rule 9(a), we not only must determine that the State has met its burden of demonstrating prejudice, *Hill v. Linahan,* 697 F.2d 1032 (11th Cir.1983), but we also must not overlook our long established requirement that a petitioner, claiming an unconstitutional conviction pursuant to 28 U.S.C. § 2254 is obliged to exhaust his state judicial remedies. *Rose v. Lundy,* 455 U.S. 509, 510, 102 S.Ct. 1198, 1199, 71 L.Ed.2d 379 (1982).

The briefs and appendix submitted by both Campas and the State were less than clear with respect to both these burdens. The original submissions of the parties did not contain many of the documents relevant to the issues. Indeed, the initial submissions even failed to disclose whether either counsel for Campas or counsel for the State, had visited the authorized repository of records for Luzerne County to determine if the relevant transcripts or documents actually existed. Moreover, even the papers that had been filed with the district court left the issue clouded.

The affidavits submitted to the district court for the most part recited matters that can best be characterized as either secondhand hearsay or as inconclusive and unsubstantiated assertions. For example, David

Kurtz, Campas' former counsel, stated by affidavit:

\*   \*   \*   \*   \*   \*

3. A tape recording of the preliminary hearing was made by the investigator for the Public Defender's office, Sylvester Orlando. Mr. Orlando has informed Affiant that when he left the Public Defender's Office, the tape recording was in the file. Mr. Orlando has no independent recollection of the facts and circumstances of the preliminary hearing or trial.

\*   \*   \*   \*   \*   \*

6. Petitioner states that Attorney Webby informed him that there was a conflict of interest for him to represent Allunis and Petitioner and that is why Petitioner was without counsel at the preliminary hearing.

\*   \*   \*   \*   \*   \*

13. Petitioner's family has been informed by the Luzerne County Clerk of Courts' Office that the file of the case, including notes of transcript and records of the preliminary hearing, are available on microfilm at the Luzerne County Courthouse but reproduction of same is beyond the financial ability of Petitioner's family.

(App. 47).

Similarly, in an affidavit of March 17, 1987 filed by Joseph Giebus, an Assistant District Attorney, Mr. Giebus recited the following:

\*   \*   \*   \*   \*   \*

7. That Joseph C. Giebus, Esquire, has discussed Petitioner's trial with former Prosecutor Hopkin T. Rowlands, Jr., and he has informed Joseph C. Giebus that he has little recollection, if any, of the specifics of the trial and is unable, unequivocally to identify Petitioner's Counsel. Joseph C. Giebus is unable to ascertain the whereabouts of any transcripts of said trial.

\*   \*   \*   \*   \*   \*

11. That Joseph C. Giebus has contacted Francis P. Burns, who has informed the undersigned he has no knowledge or recollection of pursuing an appeal on behalf of Petitioner.

It should be noted that the Giebus affidavit was not a part of the original submissions which we received. Rather, it was filed only after this court asked that the parties produce the March 17, 1987 affidavit and "any other filed affidavits bearing upon the issues before the Court." (Letter of December 27, 1988 from the Office of the Clerk, United States Court of Appeals.) From our reading of the record however, it is evident that the Giebus March 17, 1987 affidavit was available to the district court even if it was not made initially available to us, because the district court opinion makes explicit reference to it.

Even with the March 17, 1987 affidavit which was ultimately furnished to us, we still found the record to be incomplete. Accordingly, at oral argument, we questioned counsel as to the existence of any and all documents that might bear on Campas' petition and which would clarify the questions raised concerning his preliminary hearing, trial and appeals. Indeed, we went so far as to direct counsel to visit the Luzerne County records office and to search for, and provide the court with, any and all relevant and existing transcripts and records.

In anticipation of receiving additional documents, we withheld our decision resolving this appeal. Thereafter, counsel supplemented the record of State proceedings by forwarding the following documents to us:

1. Docket entries of the State Court 1968 Term;[2]

2. Trial transcript of the Common Pleas Court, Luzerne County, reflecting the commencement of Campas' trial on June 10, 1968;[3]

---

**2.** The docket entries supplied to us by counsel proved to be unreadable due to the poor quality of the photocopy.

**3.** The letter transmitting the trial transcript states: "it [the transcript] was found by the Deputy Clerk of Court in the subterranean basement of the Luzerne County Court House."

3. Copies of the opinions of the Pennsylvania Superior Court; 217 Pa. Superior 865; 232 Pa. Superior 347–356; 232 Pa. Superior XXX (1974–1975);

4. Order of the United States District Court of the Middle District of Pennsylvania dated December 6, 1985;

5. Copy of the Commonwealth Supplemental Brief in support of its motion to dismiss Campas' petition, dated December 13, 1985.

All of the above were furnished to the court and Campas' present counsel by Mr. Giebus, Assistant District Attorney of Luzerne County. No submissions were received from Campas.

After reviewing the latest submissions, as well as the original filing and the briefs of all the parties, we were struck by two significant omissions. First, we observed that although the heart of Campas' appeal stemmed from errors alleged to have occurred at his preliminary hearing, no transcript tape or record of that hearing was supplied to us, and we can only assume in light of counsels', the district court's and our repeated endeavors to obtain all relevant documents and transcripts that no record of the preliminary hearing exists.[4]

Second, our review of all the documents and briefs submitted to us still did not disclose whether Campas had fully exhausted his State judicial remedies. We recognize that the State's December 13, 1985 Supplemental Brief in support of its motion to dismiss Campas' habeas petition asserts that "... it appears that petitioner has exhausted his State remedies." (Respondent's Supp.App. p. 4). Yet, Campas in his habeas petition, in addition to other grounds alleged, claims that "[n]o appeal was ever perfected by Counsel;" "[f]ailure by Counsel to timely file direct appeal," and "I did not complete one of the appeals to the Pa. Supreme Ct. because I was un-

able to do so without Counsel. I have appealed all decisions to the best of my ability." (App. 1–3). In that portion of his habeas petition in which specific grounds must be cited, Campas alleges as Ground Two: "[D]enial of right of appeal. I have never had any Direct Appeal filed by Counsel of Record." (App. 4).

### III.

■ We cannot discern from the record before us whether the State's concession of exhaustion which it made before the district court in its Supplemental Brief of December 13, 1985—a concession which is not binding upon us, *see United States ex rel. Trantino v. Hatrack*, 563 F.2d 86, 96 (3d Cir.1977)—embraced the issue that Campas has now raised as the second ground of his petition, i.e. was appellate counsel ineffective?[5]

We recognize that some of Campas' State proceedings have been appealed, as witness the opinions and order included within the Supplemental Appendix filed by Mr. Giebus after oral argument in this court (see typescript p.8, *supra*). However, those opinions make no reference to Campas' claim that he was denied effective appellate counsel and thus had not completed one of his appeals to the Pennsylvania Supreme Court. If that issue had not been raised by Campas, let alone *"fairly presented"* to the State court, *see Zicarelli v. Gray*, 543 F.2d 466, 474 (3d Cir.1976) (en banc) (emphasis in original) quoting *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), Campas may well have failed to exhaust his state remedies whether or not the other grounds that Campas has raised in his petition have satisfied the exhaustion requirement.

We have been instructed that the doctrine of comity governs federal courts in

---

**4.** If the preliminary hearing was taped, as Paragraph 3 of the Kurtz affidavit alleges, (see typescript p. 321 *supra*), that tape has not been recovered and furnished to us. The district court opinion of November 21, 1986 directed Campas to file an affidavit demonstrating the existence of a purported "audiotape of the preliminary hearing ... [alleged to be] in the possession of the retired investigator for the public

defender," as well as other records. The record before us does not disclose any such affidavit or audiotape.

**5.** We construe Campas' claim of ineffective appellate counsel, as an allegation that Campas' Sixth Amendment rights were violated.

the context of habeas corpus. That doctrine "teaches that one court should defer action or causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982) quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950). This exhaustion requirement "serves to minimize friction between our federal and state systems of justice by allowing the state an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." *See Duckworth v. Serrano*, 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (per curiam).

This is not to say that the district court is precluded from considering the merits of a habeas petition in appropriate circumstances even though there has been a failure of complete exhaustion. *Granberry v. Greer*, 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987); *U.S. ex rel Geisler v. Walters*, 510 F.2d 887 (3d Cir.1975). In such a case, the district court should determine "... whether the interests of comity and federalism will be better served by addressing the merits forthwith or by requiring a series of additional state and district court proceedings before reviewing the merits of the petitioner's claim." *Granberry*, 481 U.S. at 134, 107 S.Ct. at 1675.

Because of the length of time that has transpired and the number of post trial proceedings revealed by the record, the district court here must not only determine whether Campas has indeed exhausted the claims he has asserted in his petition—in particular his claim that he had been denied the right to appeal by reason of ineffective appellate counsel—but the district court must also assess whether the interests of comity and federalism will be better served by requiring exhaustion or by addressing the merits of Campas' petition.

In the event the district court determines that Campas has not exhausted all of his claims, and that exhaustion is required, the district court should dismiss the petition for lack of exhaustion. On the other hand, if the district court either finds that all claims have been exhausted or that even if not exhausted, the circumstances warrant a resolution of Campas' claims on the merits, the district court should then determine, in light of the now expanded record, whether Campas' delay in filing has prejudiced the State, given the burden that the State must carry pursuant to § 2254's Rule 9(a).[6] *Hill v. Linahan*, 697 F.2d 1032, 1034–35 (11th Cir.1983); *McDonnell v. Estelle*, 666 F.2d 246, 253 (5th Cir.1982). *See* discussion *infra*, Part IV. If the State fails to satisfy its burden, then, of course, the district court must reach the merits of Campas' claims. In such a case, the burden of proof remains upon Campas. If, however, the State satisfies its burden of demonstrating prejudicial delay under Rule 9(a), the district court may re-enter an order of dismissal pursuant to that Rule, and in that case, of course, the district court will have no need to address the merits of Campas' petition.

## IV.

The district court recognized (A 34) as do we, that this court has yet to address the

---

**6.** In the factual statement of this opinion, we have stated the five grounds upon which Campas' habeas petition rests. Apart from Campas' fifth claim that his appellate counsel was ineffective in that his counsel did not properly pursue Campas' appellate rights, Campas alleges that: 1) he was denied counsel at his preliminary hearing, a critical step in the criminal proceedings; 2) he was arrested without probable cause; 3) evidence was obtained in violation of the Fourth Amendment; and 4) a defective search warrant was issued.

It will be for the district court to determine whether any or all of these claims remain viable given Campas' conviction which might, under such a circumstance, preclude a petitioner convicted under state law from being accorded federal habeas corpus relief. Some of the authorities which the district court may find relevant in this connection are: *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1988); *U.S. v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986); *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Because this is not an all inclusive list of authorities, the district court may well be persuaded by other precedents which bear on Campas' claims.

operation of habeas corpus Rule 9(a), with respect to delayed petitions.[7] The district court, relying upon *McDonnell v. Estelle*, 666 F.2d 246 (5th Cir.1982), imposed upon the State the requirements specified in *McDonnell* by making the State prove "a particularized showing of prejudice." On three separate occasions, the district court gave both Campas and the State opportunities to satisfy their respective burdens under the *McDonnell* standard. Finally, on June 22, 1987, the district court concluded that Campas had failed to overcome the State's showing of particularized prejudice and dismissed Campas' writ.

■ We, too, are persuaded that the *McDonnell* requirements, as later addressed in *Hill v. Linahan*, 697 F.2d 1032 (11th Cir.1983), are the appropriate standard to be applied when Rule 9(a) is invoked. In establishing the proper standard of review and the appropriate disposition of an appeal taken from a Rule 9(a) dismissal, *McDonnell* addressed both procedural concerns and substantive allocations of each party's burden. Referring to the procedural aspect of Rule 9(a), *McDonnell* concluded that because in almost every instance, a Rule 9(a) proceeding requires consideration of evidence outside the pleadings, Rule 9(a) cases should be treated as Fed.R.Civ.P. 56 summary judgment proceedings. Accordingly, among other things, under Rule 56 not only must adequate notice be given to opposing parties, but an opportunity to respond must also be given to non-moving parties.

### A.

In the present case, we are satisfied that Campas had the requisite notice and opportunity to respond to the State's motion. Procedurally, therefore, even though the exact form of the instant proceeding may not have comported completely with all aspects of a Rule 56 proceeding, in substantive effect, all of the safeguards and requirements of a summary judgment proceeding were met. Indeed, as we have noted, the district court directed both parties, time and again, to provide it with

documents or other information supporting their respective positions and to do so under oath. The record does not reveal why the parties did not comply with these directions. We know, however, that after oral argument and after this court required the parties to search for additional materials, and to visit the Luzerne County Court House, additional materials were furnished to us and now form part of an expanded record.

### B.

In discussing the substantive aspects of a Rule 9(a) proceeding, *McDonnell* also provided instruction as to the proper allocation of burdens of proof. *McDonnell* requires that: the State must first make a *prima facie* showing that it has been prejudiced as a result of the petitioner's delay in filing his petition. Once that showing has been made, the burden then shifts to the petitioner to prove either that the State actually is not prejudiced or that the petitioner's delay "is based on grounds of which he could not have had knowledge by exercise of reasonable diligence before the circumstances prejudicial to the State occurred." Rule 9(a), 28 U.S.C. foll. § 2254.

*McDonnell* also instructs, that the delay alone is no bar to federal habeas relief, and in order to prevail on a Rule 9(a) claim, the State must make a *particularized* showing of prejudice. Importantly, the State must establish that the prejudice was caused by the delay. *McDonnell v. Estelle*, 666 F.2d 246, 251–52 (5th Cir.1982).

Moreover, *McDonnell* instructs that if the State cannot prove its Rule 9(a) defense of delay, then the district court must reach the merits of the petitioner's claim. The burden of proof remains upon the petitioner throughout the proceeding. Thus, *McDonnell* concludes that if the petitioner's evidence is insufficient to prove the merits of his case, even though the petitioner may succeed in overcoming a Rule 9(a) motion to dismiss, it could nevertheless be appropriate for the district court to deny a

---

7. The text of Rule 9(a) will be found at typescript page 319, n. 1, *supra.*

petition on the merits where it could not grant a motion under Rule 9(a). *Id.*

In *McDonnell,* the petitioner filed a writ of habeas corpus in 1975 alleging that his 1947 convictions were unconstitutional because they were entered without benefit of counsel. The district court dismissed his petition in 1980 under Rule 9(a). No transcript or court reporter's notes were available and the judge who presided over *McDonnell*'s trial had died. The only evidence that McDonnell did not have counsel, was McDonnell's uncorroborated testimony and a copy of the docket sheet determined by the court to be ambiguous.

The State offered certain documentary evidence which it claimed constituted particularized incidences of prejudice. One of the documents was a letter stating that the records from McDonnell's 1947 trial were unavailable because they were damaged when the warehouse in which they were stored collapsed sometime in the late 1950's and early 1960's. The Court observed that delay prior to 1963, when *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799 (1963) was filed, was insufficient to establish prejudice as to the pre–1963 years because prejudice had to result from McDonnell's delay once he became aware of the right to counsel. In addition, the court commented that the evidence furnished by the State concerning records that were purportedly destroyed and the State's inability to ascertain the name of the court reporter who served at McDonnell's trial were insufficient as a matter of law to satisfy the State's burden under Rule 9(a) in a summary judgment context. The court, not satisfied that the procedural requirements under Rule 9(a) which it had announced had been met, reversed the district court and remanded for further development of the record.

Similarly, in *Hill v. Linahan,* 697 F.2d 1032 (11th Cir.1983), Hill's habeas petition was dismissed under 9(a) because of a 13–year delay. The Eleventh Circuit holding that procedural defects marred the district court judgment reversed the district court's dismissal. In doing so, it noted among other things, that the unavailability of the transcript of Hill's guilty plea was not shown to be due to Hill's delay in filing his petition. Nor was the court satisfied that the State had been prejudiced by the unavailability of Hill's former counsel who had "apparently" died. The court noted that the record did not contain evidence of his counsel's death, and more particularly, that since the record did not disclose the date of his death, the State had not demonstrated that Hill's counsel would have been available if Hill had brought his petition within a reasonable period of time—the time prescribed by Rule 9(a).

Thus, in both *McDonnell* and *Hill,* the respective courts of appeals stressed the fact that delay without more was insufficient to warrant a Rule 9(a) dismissal. Rather, the State in making its particularized showing of prejudice must relate its prejudice to the petitioner's delay and prove that the delay in filing was the very cause of the State's prejudice.

## C.

With these instructions in mind, we turn to Campas' present appeal. Without question, the district court followed the dictates of *McDonnell* and *Linahan* by requiring the State to demonstrate a particularized showing of prejudice and by properly allocating the prescribed burdens of proof. Nevertheless, these efforts did not result in the production of all relevant documents as is clearly evidenced by the supplemental materials produced for us after oral argument.

Moreover, the district court's concerns were apparently focused on Campas' claims stemming from the alleged defects of his preliminary hearing. Thus, the district court in its June 22, 1987 opinion addressed itself to those principals in the prosecution of Campas who either had died (the chief prosecution witness, a public defender who represented Campas and the magistrate who presided over the preliminary hearing) or who did not possess sufficient recollection of the events to respond to Campas' allegations (the prosecutor and a public defender who represented one of Campas' co-defendants). The district court also

stressed the State's failure to locate transcripts of Campas' preliminary hearing and trial.[8]

Significantly, the issue of ineffective appellate counsel was not discussed in the district court's November 21, 1986 opinion which found that the State had made its required particularized showing of prejudice and then shifted the burden to Campas to demonstrate that the State was not in fact prejudiced by his delay. The November 1986 opinion refers to the issue of ineffective assistance of counsel, but does so in the context of the preliminary hearing. It may well be that Campas never pressed the issue of ineffective *appellate* counsel before the district court and because of the failure of Campas' counsel to provide essential documents and evidence in support of his claims, we find it difficult to fault the district court's ruling. We cannot overlook, however, the grounds specified in Campas' habeas petition which as we have pointed out include specific reference to a claim of ineffective *appellate* counsel. Whatever prejudice may have been demonstrated by the State with respect to the preliminary hearing issues raised by Campas and whatever their viability, the claim of inadequate appellate counsel has yet to be examined by the district court in terms of the State's prejudice, if any, and the present augmented record. Thus, while we have serious reservations as to whether this latter issue has ever been exhausted (see Part II, *supra*), it nevertheless remains for the district court to determine whether the State has shown such particularized prejudice caused by the delay in Campas' filing as would bar consideration of this issue, as well as Campas' other claims.

## V.

We are persuaded that the district court order of June 22, 1987 which dismissed Campas' petition solely on the grounds of delay should be vacated and the case remanded to the district court. We reach this conclusion because as we have dis-

cussed, questions remain with respect to exhaustion, the discharge of the State's burden under § 2254's Rule 9(a) and the viability of some or all of Campas' claims. In particular, we recognize that we have had made available to us, documents which we know had not been available to the district court and thus could not have been considered by the district court.

In remanding to the district court, we place no restriction on that court in opening the record inasmuch as the district court may well determine that the resolution of the issues which we have identified cannot be accomplished without a hearing and/or the taking of additional evidence. In addition, we leave to the discretion of the district court not only the development of the record but also the manner by which the district court chooses to proceed.

In doing so, we do not imply that the events claimed as prejudicial by the State could not prove prejudice—a prejudice caused by Campas' delay in filing his petition. We observe only that to date, the relationship between delay and prejudice has not been spelled out sufficiently to meet the *McDonnell* standard—a standard which we adopt today. And, as *McDonnell* itself noted: "We certainly make no prediction as to the conclusions a court might reach on the merits of [Campas'] claim[s], should the State ultimately fail to prove its Rule 9(a) defense. We hold only that the evidence submitted to show prejudice does not justify the finding of prejudice by the district court ...", *McDonnell*, 666 F.2d at 254. This is particularly so in view of our now augmented record.

For the reasons which we have stated, we will therefore vacate the district court order of June 22, 1987 and remand to the district court for further proceedings consistent with this opinion.

---

**8.** As previously noted, the trial transcript, although not the preliminary hearing transcript, was supplied to us after oral argument in this court.