**Alberto FELL, Petitioner,**

v.

**John J. RAFFERTY, et al.,
Respondents.**

Civ. A. No. 88–3152.

United States District Court,
D. New Jersey.

May 4, 1990.

Alberto Fell, Rahway, N.J., pro se.

Robert J. Del Tufo, Atty. Gen. of New Jersey by Arthur S. Safir, Div. of Crim. Justice, Trenton, N.J., for respondents.

## OPINION

WOLIN, District Judge.

Petitioner, Alberto Fell, currently incarcerated at the East Jersey State Prison, has brought a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] In support of his application, petitioner alleges (1) that the failure of the

---

1. Section 2254(a) provides:

   The Supreme Court, a Justice thereof, a circuit judge or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution, or treaties of the United States.

prosecutor to reveal a secret arrangement for leniency with the State's key witness violated petitioner's Fourteenth Amendment due process guarantees under the rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and that this newly discovered evidence warrants relief; (2) that the State improperly refused to grant a retrial after newly discovered exculpatory evidence was uncovered; and (3) that prejudicial remarks made by the prosecutor during opening statements violated petitioner's Sixth Amendment right to a fair trial.

## I. FACTS AND PROCEDURAL HISTORY

In February 1975, Jose Fernandez entered an FBI office in Miami, Florida and gave a statement implicating petitioner Alberto Fell in the kidnapping and murder of Claudio Mayans. According to Fernandez, he was told by Fell on August 30, 1974 that Fell and Benigno Mas had been shooting victims of an individual known as "Embasor." Mas was at that time in the hospital recovering from his gunshot injuries. A few weeks later, accompanied by Fell, Fernandez drove to the hospital to pick up Mas.

After leaving the hospital, Fell instructed Fernandez to stop at a bar. Fell entered the bar and returned with Claudio Mayans. The four men then drove to an apartment where Fell and Mas fed Mayans narcotics and interrogated him concerning Embasor's attempts on their lives. After an hour and a half of questioning to no avail, Fell handcuffed Mayans' hands behind his back and instructed Fernandez to drive the four of them to the New Jersey Turnpike. Around midnight, Fell commanded Fernandez to stop on the side of the highway. Fell then removed an automatic pistol with a silencer from the vehicle and led Mayans to an embankment. Fernandez observed the flashes of four or five shots fired at the victim.

Fell reentered the vehicle and instructed Fernandez to return to New York, warning him that "[w]hoever said anything was dead." T288–23 to 25. Fell, Mas, and Fernandez returned to an apartment where Fernandez was told why Mayans had been killed. Apparently, Mayans had been hired to murder Embasor for $3000, with a $200 advance payment, but had failed to perform the agreement. Fernandez witnessed Fell secrete the murder weapon in a hidden bathroom drawer. According to Fernandez, Fell and Mas forcibly detained him in the apartment for several days until he was able to escape.

In December 1974, Fernandez met Fell in a gambling house at which time Fell threatened his life if he ever informed anyone of the murder. Fernandez went to Miami where he telephoned Fell on February 9, 1975, pleading to be left alone. During this conversation, Fell told Fernandez that he believed he was a police informer and therefore would be killed. On February 26, 1975, Fernandez made his statement to the FBI.

On September 18, 1974 the New Jersey State Police discovered the body of Claudio Mayans lying at the bottom of an embankment off the New Jersey Turnpike. The victim's arms were handcuffed behind his back and forensic experts determined that he had died from several gunshot wounds inflicted at close range by a firearm with a silencer.

The police had no leads in the murder investigation until Fernandez volunteered his statement to the FBI. Fernandez, Fell, and Mas were subsequently indicted for kidnapping and murder. A search of the apartment identified by Fernandez revealed the secret compartment that contained the gun Fernandez had watched Fell hide. Consistent with Fernandez's story, it was later discovered that Fell bore a scar from an old gunshot wound.

In October 1975, Fell was tried and convicted of kidnapping and murder in Middlesex County, New Jersey. He was sentenced to life imprisonment for the murder charge and to a concurrent 30 year to life term on the kidnapping charges. Fell unsuccessfully appealed his conviction to the Appellate Division of the New Jersey Superior Court and certification to the New Jersey Supreme Court was denied in Sep-

tember 1977. Jose Fernandez was never tried on the outstanding charges and in April 1977 the State of New Jersey dismissed the indictment against him.

Petitioner first sought state post-conviction relief in November 1980 on the grounds of inadequate trial translation procedures. Relief was denied. In May and June 1983, petitioner sought state post-conviction relief on the grounds that newly discovered evidence of a secret agreement between Fernandez and the State warranted a new trial. After holding a hearing on the issue, the Superior Court denied petitioner's motion. This decision was affirmed on appeal; certification to the New Jersey Supreme Court was denied in 1987.

In October 1985, Fell sought a new trial on the grounds that newly discovered evidence implicated Jose Fernandez in the murder of Mayans. Pastore Vasquez, a New Jersey State inmate, claimed that Fernandez had confessed to the murder. At a hearing held in December 1985 it was determined that Vasquez's testimony was incredible. Fell's motion for a new trial was denied. The denial was upheld on appeal, and certification was denied in 1987.

Fell filed the present petition for habeas corpus on July 15, 1988.

## II. DISCUSSION

### A. *Prejudicial Delay*

The State argues that Fell's 13-year delay in filing the present petition constitutes prejudicial delay and warrants dismissal of the petition. Rule 9(a) of the Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254 provides:

A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

The State, relying upon *Davis v. Adult Parole Authority*, 610 F.2d 410, 414–415 n.

12 (6th Cir.1979), argues that a presumption of prejudice to the State arises if the petition is filed more that five years after judgment of conviction. The Court disagrees and finds this argument against the weight of authority.

The *Davis* court relied primarily upon the Advisory Committee Notes in reaching its decision. 610 F.2d at 414–415 n. 12. The Advisory Committee stated: "If delay is more than five years after the judgment of conviction, prejudice is presumed, although this presumption is rebuttable by the petitioner." Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254, Rule 9 advisory committee note. This Advisory Committee opinion does not control the result here and the Court finds it contrary to the clear intent of Congress.

Congress rejected the promulgators' proposal to place a presumptive five-year deadline on petitions and took a position contrary to the advisory committee. Citing to Supreme Court decisions to the same effect, Congress expressed its intent to codify existing caselaw and rejected such presumptions. H.R.Rep. No. 1471, 94th Cong., 2d Sess. 5 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin.News 2478, 2481–82. *See Lawrence v. Jones*, 837 F.2d 1572, 1575 (11th Cir.1988) (Congress deleted five year presumption from rule, finding it to be unsound and inconsistent with prior case law); *Berry v. Mintzes*, 726 F.2d 1142, 1146 (6th Cir.), *cert. denied*, 467 U.S. 1245, 104 S.Ct. 3520, 82 L.Ed.2d 828 (1984); *LaLande v. Spalding*, 651 F.2d 643, 644 (9th Cir.), *cert. denied*, 452 U.S. 965, 101 S.Ct. 3119, 69 L.Ed.2d 978 (1981); *Mayola v. Alabama*, 623 F.2d 992 (5th Cir.1980), *cert. denied*, 451 U.S. 913, 101 S.Ct. 1986, 68 L.Ed.2d 303 (1981). The Supreme Court has historically rejected strict time limitations in the habeas context. *Heflin v. United States*, 358 U.S. 415, 420, 79 S.Ct. 451, 454, 3 L.Ed.2d 407 (1959) (Stewart, J., concurring) (laches doctrine not applicable in habeas insofar as it sometimes permits denial of relief based solely on passage of time); *Pennsylvania ex rel. Herman v. Claudy*, 350 U.S. 116, 123, 76 S.Ct. 223, 227, 100 L.Ed. 126 (1956) (lapse of 8 years

does not require dismissal); *United States v. Smith*, 331 U.S. 469, 475, 67 S.Ct. 1330, 1333, 91 L.Ed. 1610 (1947) (habeas corpus provides remedy without limit of time). *See also Baxter v. Estelle*, 614 F.2d 1030, 1032–33 (5th Cir.1980), *cert. denied*, 449 U.S. 1085, 101 S.Ct. 873, 66 L.Ed.2d 810 (1981) (traditional rule requiring State to show that delay was unreasonable and prejudicial still applies under Rule 9(a)).

■ Under Rule 9(a), a petition may be dismissed if three conditions are met: (1) the State must plead and prove that the petitioner unreasonably delayed setting in motion the course of judicial events necessary to bring the petition before the federal courts; (2) the State must plead and prove, with particularity, that the delay prejudiced the state; (3) if the State meets its aforementioned burdens, the petitioner can avoid dismissal under Rule 9(a) if he pleads and proves that the petition is based upon "grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances of prejudice to the state occurred." Fed.R.Civ.P. 9(a). *See Campas v. Zimmerman*, 876 F.2d 318 (3d Cir.1989); *Lawrence v. Jones*, 837 F.2d 1572 (11th Cir.1988); Liebman, *Federal Habeas Corpus Practice and Procedure* 327–332 (1988) (collecting cases).

■ Applying the requirements of Rule 9(a) to the present case, this Court finds no reason to dismiss the petition based upon the grounds of prejudicial delay. First, the State has failed to offer any argument to support its unreasonable delay claim. Rather, the State merely assumes that the delay is "inexcusable" without providing a reason for such characterization. Fell's 13–year delay is not unreasonable in light of the length of the appellate process and the claims of newly discovered evidence he has raised.

Petitioner was sentenced for the murder and kidnapping convictions on December 1, 1975. In May 1977, the Superior Court of New Jersey, Appellate Division, affirmed petitioner's conviction. The New Jersey Supreme Court denied certification in September 1977. In November 1980, Fell filed for and was denied state post-conviction relief on the grounds of inadequate trial translation procedures. This decision was appealed and affirmed by the Appellate Division in May 1982 and certification was again denied by the New Jersey Supreme Court in October 1982. Fell then filed a motion for a new trial based upon the *Brady* claim he alleges in the present habeas petition. A hearing was held on this issue in May and June of 1983 and the motion was denied. While the petitioner was appealing this decision, he filed a motion a retrial based upon the newly discovered evidence of Fernandez's alleged confession to the murder. A hearing was held on this issue and the motion was denied in December 1985. Petitioner's appeal from this decision and his already pending appeal were consolidated by the Appellate Division in March 1986. Over one year later, on April 9, 1987, the Appellate division affirmed the orders denying retrial and on December 10, 1987, the New Jersey Supreme Court denied certification. The present petition for habeas corpus was filed on July 15, 1988.

The record indicates that throughout the bulk of the 13–year period subsequent to conviction, the petitioner was engaged in litigation before the state courts on the issues raised in his habeas petition. Before applying for a writ of habeas corpus, a petitioner is required to exhaust all of his claims in the state courts. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Additionally, when filing a petition for habeas corpus, the petitioner is obligated to raise all federal claims of which he is aware. Successive petitions are strongly discouraged.[2] See 28 U.S.C. § 2254(b); Rule 9(b) of the Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254. In furtherance of this policy against successive petitions, a "mixed petition," i.e. one containing both exhausted claims and unexhausted claims, will be dismissed without prejudice in order to permit the state

---

**2.** Successive petitions presenting new or different grounds for relief are permissible only upon a showing that they are not abusive. An abuse of the writ would occur if the petitioner deliberately withheld claims from an earlier petition.

courts to hear the unexhausted federal issues. *Rose,* 455 U.S. at 510, 102 S.Ct. at 1199. Therefore, while possible federal claims are being pursued through the state court system, a petitioner is justified in delaying a habeas petition in order to avoid multiple petitions as the individual claims become exhausted. With these procedural obligations in mind, the Court now turns to the reason for the petitioner's delay.

As to the first claim, that the prosecutor had concealed an agreement made with the State's key witness in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the petitioner cannot be faulted for failing to raise the issue sooner. It is his contention that the alleged secret agreement was purposely concealed from him and that it was not until some time later that he discovered the alleged bargain. The fact of concealment by the State is reasonable grounds for at least part of the delay in raising the claim. Once raised in 1983, the claim was properly pursued in the State courts until it was finally denied in December 1987. Petitioner could not have raised this claim in a petition for habeas corpus until it had been exhausted in the state courts. In fact, approximately six months after exhaustion of the claim, petitioner did file the present habeas. The Court does not find a six month lapse unreasonable.

Petitioner's second claim that Fernandez confessed to the murder, was also not discovered until some time after his conviction. In March 1983 Vasquez informed Fell that Fernandez had confessed to the murder. At that time, Fell was already engaged in state post-conviction proceedings on his *Brady* claim. Petitioner raised this second claim before the state courts in October 1985, a delay of only two and one half years. Once raised, the claim was properly pursued through the state court system until certification by the New Jersey Supreme Court was denied in December 1987. The time elapsed during pursuit of the claim in state courts should not be considered for Rule 9(a) purposes since such delay is not only reasonable, but required if the claim is to be properly exhausted. The total time delay for which

the petitioner bears responsibility is the two and one half years between the date he discovered evidence of Fernandez's confession and the date the motion for a limited remand to the state court was filed; and the six months between the denial of certification by the New Jersey Supreme Court and the filing of the habeas petition. This three year delay is not unreasonable.

By the State's own standards, albeit incorrect ones, the delay for which the petitioner is responsible is less than five years, thus no presumption of prejudice attaches. Moreover, insofar as the petitioner is proceeding pro se, does not speak English, and was engaged in other post-conviction litigation at the time he initially learned of Fernandez's alleged confession, the three year delay does not seem unreasonable.

Finally, the claimed delay by petitioner in the raising of his third claim, prejudicial remarks made by the prosecutor during opening statements, is equally unavailing to the state. In order to comply with the exhaustion requirements of 28 U.S.C. § 2254(b), the petitioner could not have filed for habeas corpus relief until after the New Jersey Supreme Court denied certification in September 1977. Once petitioner discovered claims not raised on direct appeal and therefore began pursuing them through New Jersey's post-conviction process, he had reasonable cause for delay in filing a habeas petition. Since mixed petitions are dismissed for failure to exhaust claims, and successive petitions are strongly disfavored, an individual would reasonably delay filing a petition until all known claims had been exhausted, exactly as petitioner did in the present case.

Petitioner first filed for state post-conviction relief in November 1980. This claim was not exhausted until October 1982. A few months later, petitioner filed his *Brady* motion which was not finally exhausted until December 1987. Thus, the delay for which the petitioner is accountable is the period between September 1977 and November 1980, the six months between October 1982 and the *Brady* hearing in May 1983, and the six months between exhaustion in December 1987 and the July 1988

filing of the habeas petition. The delay for which the petitioner is responsible totals four years. Again, this is less that the five year standard proposed by the state and considering the status of the defendant, four years does not seem so unreasonable as to warrant summary dismissal.

Were the Court to conclude that the total delay for which the petitioner is accountable is unreasonable within the meaning of Rule 9(a), it would still find that the State has failed to meet its second burden of pleading and proving prejudice. The State relied exclusively upon the authority of *Davis* and the Rule 9 advisory committee note for the proposition that the delay is presumptively prejudicial. A search of the State's answer to the petition reveals that prejudice is neither pleaded nor established. The State merely observes that: "For instance, State's witness Fernandez, after dismissal of the Indictment against him, may very well be unavailable or his whereabouts unknown." Answer at 9. Such hypothesizing falls far short of a particularized showing of prejudice and plays no role in supporting a Rule 9(a) dismissal.

In addition to proving prejudice, the State must show that the prejudice was caused by the petitioner's delay. It is far from certain that petitioner's delay will make it more difficult to find Fernandez. The record indicates that Fernandez's whereabouts were already unknown in December 1977, nine months before petitioner's conviction was even finalized. 9T104. Thus, the only prejudice asserted is not clearly attributable to petitioner's delay.

B. *Exhaustion of Claims*

█ A petitioner claiming an unconstitutional conviction pursuant to 28 U.S.C. § 2254 is obligated to exhaust his state judicial remedies before pursuing his claims in the federal courts. *Rose v. Lundy*, 455 U.S. 509, 510, 102 S.Ct. 1198, 1199, 71 L.Ed.2d 379 (1982). The State asserts in

answer to the present petition that Fell may not have exhausted his prosecutorial abuse claim.[3] Although Fell did raise this claim before the Appellate Division, the record does not indicate whether the claim was presented in Fell's petition for certification to the New Jersey Supreme Court. Fell did petition for certification, but a copy of that petition has not been provided to the Court and the State is unable to find its copy. Thus, the State asserts possible unexhaustion. The Court finds this assertion unconvincing.

Fell properly raised his prosecutorial abuse claim before the Appellate Division. There is nothing in the record to suggest that he failed to raise this claim in the New Jersey Supreme Court certification petition. To the contrary, Fell's record in this case reveals a pattern of full appeal on every claim asserted. Nor should petitioner be held accountable for the State's failure to locate the certification petition; it is the State's responsibility to produce copies of petitioner's earlier briefs.[4]

█ Moreover, the Court finds the claim to be exhausted under the futility doctrine. Where a State court would hold a claim procedurally barred or where State remedies are ineffective or no longer available to address a claim, that claim will be deemed exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981); *Gibson v. Scheidemantel*, 805 F.2d 135, 139 (3d Cir.1986); *Wallace v. Duckworth*, 778 F.2d 1215, 1225–26 (7th Cir.1985). *Cf. Harris v. Reed*, 489 U.S. 255, ——, 109 S.Ct. 1038, 1043 n. 9, 103 L.Ed.2d 308 (1989). Even if Fell had not raised the prosecutorial abuse claim in the petition for certification, the claim is now exhausted. Thirteen years have elapsed since the Appellate Division ruled on this issue. The New Jersey rules governing appellate practice require that petitions for certification be filed within 20 days of a final judgment of the appellate

---

**3.** There is no contention that petitioner's other claims are unexhausted.

**4.** "[The answer] shall state whether the petitioner has exhausted his state remedies.... If the petitioner appealed from the judgment of con-

viction ... a copy of the petitioner's brief on appeal ... shall also be filed by the respondent with the answer." Rule 5 of the Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254.

division. N.J. Ct. R. 2:12–3(a) (1989).[5] If Fell failed to raise prosecutorial abuse in his petition, the time to do so has elapsed. Additionally, the time for state post-conviction relief has elapsed. N.J. Ct. R. 3:22–12 (1989).[6] The Court sees no excusable neglect or cause for failure to raise the claim, if in fact it was not raised, and therefore cannot envision the New Jersey Courts now agreeing to address the thirteen-year-old issue. Fell has no remedy available to him in the New Jersey court system and his claim is thereby deemed exhausted.

## C. *Prosecutorial Suppression of Evidence*

Petitioner claims that in violation of the Fourteenth Amendment's due process guarantee, the prosecutor failed to disclose material evidence to the defendant. In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), the Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to the guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The State concedes that evidence which tends to impeach a witness is considered material under the *Brady* rule. Answer at 4. See *Giglio v. United States*, 405 U.S. 150, 154–55, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972).

Petitioner asserts that a secret agreement was made between Fernandez, the State's key witness, and the prosecution. An agreement which provides leniency or dismissal of charges in exchange for testimony would be sufficiently material to require disclosure if requested by the defendant. The State has consistently denied the existence of any agreement with Fernandez. At a hearing held on May 19, 26 and June 3, 1983 before the Superior Court

of New Jersey, Law Division, Middlesex County, the court found that no agreement had been made.

■ Should the record indicate, or the state prove, that a state court of competent jurisdiction issued written factfindings after a hearing on the merits of a controlling factual issue in a proceeding to which both the petitioner and the state were parties, the federal court must accept and apply the written factfindings. 28 U.S.C. § 2254(d). The petitioner can overcome this presumption of correctness if he establishes that the procedures by which the state court arrived at its findings are tainted in one of seven ways[7] or the findings are clearly erroneous.[8] This presumption of correctness accorded to state court findings of fact limits the jurisdiction of the federal courts. *Sumner v. Mata*, 449 U.S. 539, 547 n. 2, 101 S.Ct. 764, 792 n. 2, 66 L.Ed.2d 722 (1981).

■ The claim petitioner raises rests entirely on an issue of fact: whether there was an agreement between Fernandez and the State. As such, the Court must accept the facts as found by the State unless the record clearly indicates a different outcome.

A number of "suspicious circumstances" were found by the state court (10T67–6 to 7): (1) a memorandum by Fernandez's attorney dated June 1, 1975 indicated that a preliminary offer had been made to Fernandez for a maximum sentence of ten years with no immunity; (2) the prosecutor met with Fernandez on multiple occasions without Fernandez's counsel present; (3) Fernandez no longer desired representation by the Public Defender; (4) the New York City Police Department was seeking the cooperation of Fernandez shortly before the actual trial testimony; (5) the State

---

**5.** Although this rule has been amended since the time petitioner was convicted, none of the changes affect the case at hand.

**6.** Rule 3:22–12 provides in relevant part:
A petition to correct an illegal sentence may be filed at any time. No other petition shall be filed pursuant to this rule more that 5 years after rendition of the judgment or sentence sought to be attacked unless it alleges

facts showing that the delay beyond said time was due to defendant's excusable neglect.

**7.** See 28 U.S.C. § 2254(d)(1)–(7).

**8.** *See* 28 U.S.C. § 2254(d)(8); *Bontempo v. Fenton*, 692 F.2d 954, 960 n. 3 (3d Cir.1982), *cert. denied*, 460 U.S. 1055, 103 S.Ct. 1506, 75 L.Ed.2d 935 (1983).

never gave Fernandez a polygraph exam despite his apparent willingness to submit to one; (6) the State did not investigate Fernandez's claim that he worked for federal authorities in Florida; (7) the prosecutor initially determined to try Fernandez before Fell but later reversed this order; (8) nine days after Fell's trial was concluded Fernandez was released on his own recognizance, with no further communication, despite pending indictments for murder and kidnapping; (9) the State paid for Fernandez's airplane ticket to Miami to see his family, and Fernandez was never heard from again; (10) there was no memorandum in the prosecutor's file explaining why Fernandez was released; (11) in April 1977 the prosecutor moved for dismissal of the indictment against Fernandez and no memorandum or affidavit filed with the court indicated the reasons for this motion; and (12) the judge dismissing the indictment against Fernandez expressed uncertainty as to whether the reasons for the prosecution's moving from skepticism to ultimate belief in Fernandez's innocence were well-founded or contrived. 10T67 to 71.

Offsetting these suspicions, the court found that: (1) a plea bargain was not offered but would be offered although the specifics were never determined; (2) a state memorandum indicated that initial meetings with Fernandez revealed that he wanted no deal and wished to testify; (3) in light of the testimony given by Fernandez at trial, no promise of leniency was made to Fernandez in any of the private conversations held with the prosecutor; (4) the prosecutor did not know what was going to happen with Fernandez at the time he testified; (5) the prosecutor's opportunity to observe Fernandez under cross-examination at trial and Fernandez's concern for the well-being of his family were sufficient reasons for the release of Fernandez; (6) the prosecutor acted responsibly toward both sides regarding the lack of polygraph examinations.

■ Under these circumstances, the Court could only have found Fell's allegations to be true if it determined that either the prosecutor or the defense counsel or both had lied to the court. The court was reluctant to find such abuse on the part of officers of the court. 10T71 to 82. In conclusion, the court stated,

"[w]hen I view the circumstances from both sides of the potential explanation, and then compare that with the fact that I've had two attorneys testify that absolutely no deals were made or implied, and that further the [p]rosecutor ..., consistent with what he originally told the Court, was unsure as to what he was going to do with Fernandez at the time that Mr. Fernandez was testifying, and that they said that under oath, I cannot conclude that the circumstances here are such that I believe that a deal had been expressed, directly or through implications, to Mr. Fernandez, of leniency...." 10T82–11 to 23.

Although the circumstances of this case appear to raise some suspicion, the Court is bound by the findings of the state court. This Court cannot say that the record *clearly* or *convincingly* indicates a different conclusion. State courts have had the opportunity to assess the credibility of the witnesses and are in the better position to judge the ultimate facts of this case. Thus, petitioner's *Brady* claim must be dismissed. The facts as found indicate no agreement was made and therefore no material issue was concealed in violation of petitioner's Fourteenth Amendment rights. Petitioner's contention that relief should be granted on the basis of newly discovered evidence is equally meritless. As no agreement was ever made, no newly discovered evidence warrants relief. Moreover, the discovery of new evidence alone is not a cognizable ground for habeas relief. *De Martino v. Weidenburner*, 616 F.2d 708, 711 (3d Cir.1980).

### D. Newly Discovered Exculpatory Evidence

■ Petitioner claims that newly discovered evidence warrants a new trial. Fell states that in early 1975, while Fernandez was incarcerated in the Middlesex County Workhouse, an inmate by the name of Vasquez met Fernandez. According to Vasquez, Fernandez confessed to him that he

had committed the murder. In 1983, Vasquez told Fell of this confession. Fell filed for state post-conviction relief in 1985 alleging newly discovered evidence.

■ Federal habeas corpus is available to prisoners claiming that they are being held in custody in violation of the United States Constitution. 28 U.S.C. § 2254(a). "The existence of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." *De Martino*, 616 F.2d at 711; *see also Townsend v. Sain*, 372 U.S. 293, 311–12, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963). Here, Fell does not assert any constitutional violation but merely seeks a retrial because of the alleged exculpatory nature of the evidence. Without more, his claim is not cognizable under 28 U.S.C. § 2254 and must be dismissed.

Moreover, the state court held a hearing on the newly discovered evidence and found Vasquez's testimony incredible. As discussed above, this Court must accord a presumption of correctness to state court findings of fact. No clear or convincing doubt as to the state findings has been raised by petitioner and thus, this Court is bound by the prior determination that no newly discovered evidence warranting relief exists.

E. *Prejudicial Remarks By Prosecutor*

Petitioner claims that remarks made by the prosecutor during his opening statement infected the trial with prejudicial error. The prosecutor made the following remarks:

> [Fernandez] will tell you that trail led him to New York City and in New York City he renewed his acquaintance with Mass [sic] and he met Fell and that he spent considerable time at a gambling house in New York City; that he spent considerable time with Fell; that he drove around with Fell when Fell delivered and when Fell picked up narcotics, cocaine.
>
> He will tell you that he gained Fell's confidence and he became friendly with him; that he often drove Fell around and after a period of time confided in him.

And the information that he confided in him was that there was a competition—a war, if you will—between Fell and Mass [sic], on the one hand, and a man named Ramon over control of gambling in Spanish Harlem; that some time in August of 1974 Fell and Mass [sic] were shot and wounded as a result of this war; and that they were shot and wounded by a man named—called Domingo, also called Embasor, embassador. You will also be able to draw your own kind of conclusions as to what kind of embassador he was.

> They suspected that Embasor was hired by this Ramon—didn't know that for sure—but while they were both in the hospital recovering from their gunshot wounds, they hired the victim in this case, Claudio Mayans, and they hired him to gain revenge to kill Embasor. But what they didn't know was that Claudio Mayans was a friend of Embasor and that he not only did not kill Embasor, but he took the money they had given him as a down payment for this murder contract and he shared it with Embasor and he made a fool out of Mass [sic] and Fell. They learned that while they were in the hospital. PT5 to 8.

Petitioner objects, specifically, to the implications that he was a member of Cuban organized crime and that a "war" was taking place. This claim is without merit.

■ The issue before the Court is whether the remarks by the prosecution "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *United States ex rel. Perry v. Mulligan*, 544 F.2d 674, 678 (3d Cir. 1976), *cert. denied*, 430 U.S. 972, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977). *See also Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). If improper remarks are made, the Court may consider the limiting instructions given by the trial judge to assess the extent of any prejudice. *Virgin Islands v. Joseph*, 770 F.2d 343, 349 (3d Cir.1985); *United States v. Gallagher*, 576 F.2d 1028, 1042 (3d Cir.1978).

■ The Court does not find that the remarks made by the prosecutor were so

substantial as to infect the entire trial. Metaphorical remarks labeling the situation between Fell and Ramon to be a "war" are not, without more, enough to deny the petitioner a fair trial. The prosecutor was making a good faith attempt to establish motive for the murder and the remark that a "war" was taking place is only one minor point in his opening statement. Finally, the evidence against Fell was strong. Fernandez testified as to Fell's participation and the physical evidence supported that testimony.

Both the judge and the prosecutor admonished the jury to refrain from considering any opening remarks as evidence. The prosecutor told the jurors that his comments did not constitute evidence and that they were to consider only the testimony of the sworn witnesses. T2–15 to 23. In his charge to the jury, the judge stressed that they were the sole judges of the facts and testimony (T908–12 to 14; 940–18 to 21) and that neither opening statements nor expressions of opinions constitute evidence. T909–22 to 910–2.

This Court does not find that the prosecutor's remarks were so prejudicial as to infect the entire trial with unfairness. Additionally, the admonitions by the prosecutor and the judge were sufficient to cure any possible error.

### III. CONCLUSION

After carefully examining the entire record, the Court is satisfied that there has been no infringement of petitioner's constitutional rights. No agreement between the State and Fernandez was hidden from the petitioner in violation of *Brady* and no remarks made by the prosecution during opening statements were so prejudicial as to deny petitioner a fair trial. Finally, insofar as petitioner claims newly discovered exculpatory evidence warrants a new trial, such claims are not cognizable on habeas corpus review and cannot be considered. Accordingly, the Court will deny the petition for a writ of habeas corpus.